[Cite as *In re Mercer*, 2011-Ohio-7073.]



# Court of Claims of Ohio
## Victims of Crime Division

The Ohio Judicial Center
65 South Front Street, Fourth Floor
Columbus, OH 43215
614.387.9860 or 1.800.824.8263
www.cco.state.oh.us

IN RE: MYKAYLA MERCER


MYKAYLA MERCER

　　　Applicant


Case No. V2010-50469

Commissioners:
Susan G. Sheridan, Presiding
William L. Byers IV
E. Joel Wesp

ORDER OF A THREE-
COMMISSIONER PANEL

{¶1} On October 22, 2009, the applicant, Mykayla Mercer, filed a compensation application as the result of injuries she sustained from a November 29, 2008 automobile crash.　On February 12, 2010, the Attorney General issued a finding of fact and decision denying the applicant's claim pursuant to R.C. 2743.60(B)(1)(c).　The Attorney General's investigation revealed that the applicant was a passenger in a vehicle driven by a driver she knew or should have known was under the influence of alcohol at the time of the crash.　On March 1, 2010, the applicant submitted a request for reconsideration.　On April 23, 2010, the Attorney General rendered a Final Decision finding no reason to modify the initial decision.　On May 12, 2010, the applicant filed a notice of appeal from the April 23, 2010 Final Decision of the Attorney General.　Hence, a hearing was held before this panel of commissioners on July 20, 2010 at 11:55 A.M. For hearing purposes only this case was consolidated with Case No. V2010-50027 *In re Shontee*.　Both claims involved the same automobile crash.

{¶2} The applicant, Mykayla Mercer, appeared with her attorney, Michael Falleur. Attorney Kimberley Wells appeared on behalf of the applicant in Case No.

V2010-50027, Marsha Crishon.   The state of Ohio was represented by Assistant Attorney General Georgia Verlaney.

{¶3} The applicant contends that inasmuch as Mykayla Mercer requested to be let out of the vehicle, accomplice liability pursuant to R.C. 2743.60(B) should not bar her claim.

{¶4} The Attorney General argues that based on the investigation conducted by the Dayton Police Department, Mykayla Mercer knew or reasonably should have known that Felicia Burg was under the influence when she entered the vehicle.   Felicia Burg was convicted of a violation of R.C. 2903.08(A)(1), aggravated vehicular assault as a proximate result of violating R.C. 4511.19(A)(1)(a), operating a motor vehicle while under the influence of alcohol, a drug of abuse, or a combination of both. Consequently, this claim should be denied pursuant to R.C. 2743.60(B).

{¶5} The Attorney General called Officer Jason Ward of the Dayton Police Department to testify.   Based upon Officer Ward's educational background and experience, and without objection from either applicant, Officer Ward was qualified as an expert in technical crash investigation.

{¶6} Officer Ward related that he investigated the crash scene on November 29, 2008. His field investigation determined that the vehicle was traveling at 65 mph at the time of the crash.   He then proceeded to Miami Valley Hospital where he interviewed applicant, Mykayla Mercer.   He conducted the interview in the trauma room, and although she was in pain, her answers to his questions were coherent.   Mercer chronicled that prior to the crash she, Cicely Shontee, and Felicia Burg were at Leo's Bar drinking alcohol, and that while Felicia was driving, she was drinking Powerade mixed with vodka.   Mercer stated Ms. Burg was operating the vehicle in a reckless manner, talking on her cell phone, and smoking.   The officer allowed both the applicant and her mother the opportunity to review the witness statement, which they did making no corrections or comments.   Finally, Officer Ward described the effects alcohol has on

{¶7} a driver: impaired vision and judgment, increased risk taking, and diminished motor skills.   Officer Ward noted Felicia Burg's blood alcohol level of .23, almost three

times the legal limit, confirmed she was operating her vehicle while drunk which resulted in the subsequent crash.

{¶8} Upon cross-examination, the officer stated he was unaware of any medications the hospital might have administered prior to his interview with the applicant. Furthermore, he stated he had no way of knowing how the vehicle was being operated prior to the crash. Officer Ward stated a person who wanted out of a vehicle they believed was being operated in a reckless manner had only two options: ask the driver to stop or get out when the vehicle was stopped.

{¶9} On redirect examination, Officer Ward testified he was not aware of the significance of the Propel (Powerade) bottle until he questioned the applicant. He also stated that the applicant never told him or Officer Jackson, who interviewed the applicant while she was confined to a nursing home, that she had requested or demanded that Felicia Burg let her leave the vehicle.

{¶10} On re-cross examination the officer admitted he had never asked the applicant if she had wanted to exit the vehicle. Whereupon, the testimony of Officer Ward was concluded.

{¶11} }Mykayla Mercer was called to testify. She related that after working an approximate fourteen-hour shift, she returned to an apartment that she shared with Cicely Shontee. It was decided that they would go out that evening and be transported by Cicely's friend Felicia Burg, a person Mykayla had never met. They left for Leo's Bar and she recalled that Felicia was drinking a sports drink mixed with diluted vodka while they were driving, but in her opinion had not drunk enough to get "buzzed." Once they arrived at Leo's she and Cicely went to the dance floor where they remained the

{¶12} rest of the evening, while Felicia remained at the bar with a gentleman friend. She related she had one encounter with Felicia while in the bar and recalled Felicia was drinking a tall dark drink she thought was either Jack Daniels, Jagermeister and coke, or a Long Island Ice Tea. This contact lasted approximately ten minutes. Mykayla stated that Leo's was a "bootleg" bar, meaning it would stay open and serve drinks after

the legal closing time, consequently she left the bar sometime after 2:30 A.M. She testified that she realized that Ms. Burg was intoxicated prior to leaving the parking lot of the bar, since Ms. Burg almost struck two individuals with her car. She asserts both she and Cicely urged Felicia to stop and pullover, slow down, drive more carefully or let Cicely drive. (It should be noted that Cicely did not have a driver's license and was found to be over the legal limit for alcohol consumption when examined at the coroner's office). Mykayla testified she did not remember Felicia driving on the highway or the crash, but was fully aware that Felicia was intoxicated. Mykayla stated she could not recall speaking to any police officers at the scene, at the hospital, or any time thereafter.

{¶13} Upon cross-examination, Mykayla Mercer admitted that neither she or Cicely attempted to call anyone to ask for a ride from Leo's. She stated as soon as Felicia started the car, accelerated causing the tires to throw gravel, and almost hit two pedestrians, she knew Felicia was intoxicated. However, she declared she and Cicely had no choice but to ride with her since the buses had stopped running this late (approximately 3:00 A.M.) and it was too far to walk back to Cicely's apartment.

{¶14} Upon redirect examination, Mykayla stated she became concerned about Felicia's ability to drive when the car was moving in the parking lot.

{¶15} Upon questioning by a panel of commissioners, Mykayla revealed her mind set at the time of the incident was to calm Felicia down and get home, not to exit the vehicle. She stated she did not attempt to get out of the car. Whereupon, the testimony of Mykayla Mercer was concluded.

{¶16} The applicant called Carmen Swider, Mykayla's mother, to testify via telephone. Ms. Swider related she was notified by the hospital that Mykayla had been involved in an automobile accident. She stated due to the injuries, shock, and medications that had been administered to Mykayla she was not herself. She did recall that police officers entered the room and questioned Mykayla.

{¶17} Upon cross-examination, Ms. Snider admitted she was present during the police officer's questioning of her daughter. While she questioned her daughter's coherence

she conceded the officer put the questions and answers into written form and allowed both Ms. Swider and Mykayla to review the written document.   Whereupon, the testimony of Ms. Swider was concluded.

{¶18} In closing, the Attorney General asserts that this claim must be denied pursuant to R.C. 2743.60(B).   The applicant was put on notice prior to initially entering Felicia Burg's vehicle that she intended to drink.   Applicant testified that Felicia was drinking from a sports drink bottle mixed with diluted vodka on the way to Leo's Bar.   It is certainly reasonable to assume that one who is drinking alcohol on the way to a bar will continue to drink more   upon arrival.   The medical evidence reveals Felicia, Cicely, and Mykayla were all intoxicated when they left Leo's.   However, the applicant provided no testimony that there was any talk of taking a cab or finding alternative transportation home.   The only discussion apparently centered around who was in the best condition to drive.   (It should be noted that only Felicia held a valid driver's license and the passengers were not licensed drivers).

{¶19} The reckless operation of the vehicle at the time of the crash was directly related to the intoxication of the driver, as evidenced by the fact that Felicia Burg

{¶20} pleaded guilty to aggravated vehicular homicide, aggravated vehicular assault, and two separate OVI charges, each count having an alcohol specification.

{¶21} Applicant's argument that somehow she was kidnapped or forcefully detained by the driver does not reconcile with the evidence.   The applicant's testimony revealed that the passengers were more concerned with having Felicia operate the vehicle in a more responsible manner to continue on to their destination at Waffle House, rather than having Felicia pull over so they could get out.

{¶22} The Attorney General firmly believes that the facts presented in this case by the police report, medical records, and testimony presented at the hearing show, by a preponderance of the evidence, that the applicant voluntarily knowingly assumed the risk when she rode with Felicia Burg and accordingly, the applicant's claim should be denied pursuant to R.C. 2743.60(B).

{¶23} In closing, the applicant urged the panel to follow the holding in *In re Garza*, V2004-60610tc (11-2-04).   In that case the victim, who was much younger than the offending driver, accepted a ride which resulted in a fatal car crash.   That panel, in reversing the Final Decision of the Attorney General, found that the fact the decedent was under the drinking age, was significantly younger than the offender, had met the offender a relatively short time prior to the incident, that the offending driver's blood alcohol level was only slightly higher than the legal limit which may have prevented the victim from being aware that the offender was intoxicated, and that the decedent had just prior to the event exercised reasonable judgment by declining to accept a motorcycle ride without a helmet, provided sufficient evidence to warrant an award of reparations.

{¶24} The applicant also urged the panel to follow the reasoning of the Attorney General's Final Decision in *In re Merrill-Payne* issued October 13, 2005.   In that case,

{¶25} the Attorney General reversed its initial finding of fact and decision denying an award pursuant to R.C. 2743.60(B), when it was discovered that the passenger had made repeated requests to be let out of the vehicle but the offending driver refused.   In a subsequent injury -causing crash the passenger's claim was granted due to the ignored requests of the victim.

{¶26} The applicant asserts any consent Mykayla Mercer had given to Felicia Burg to ride in her vehicle was withdrawn once Burg began shaking the steering wheel, intentionally hitting curbs, and speeding.   Once her consent was withdrawn the disqualifying factors pursuant to R.C. 2743.60(B) should not apply.   Accordingly, this panel should reverse the Final Decision of the Attorney General and grant an award in favor of the applicant.

{¶27} R.C. 2743.60(B)(1)(a), (b), and (c) state:

      a.        "(B)(1) The attorney general, a panel of commissioners, or a judge of the court of claims shall not make or order an award of reparations to a claimant if any of the following apply:

b.       "(a) The claimant is the offender or an accomplice of the offender who committed the criminally injurious conduct, or the award would unjustly benefit the offender or accomplice.

c.       "(b) Except as provided in division (B)(2) of this section, both of the following apply:

d. "(i) The victim was a passenger in a motor vehicle and knew or reasonably should have known that the driver was under the influence of alcohol, a drug of abuse, or both.

e.       "(ii) The claimant is seeking compensation for injuries proximately caused by the driver described in division (B)(1)(b)(i) of this section being under the influence of alcohol, a drug of abuse, or both.

f. "(c) Both of the following apply:

g.       "(i) The victim was under the influence of alcohol, a drug of abuse, or both and was a passenger in a motor vehicle and, if sober, should have reasonably known that the driver was under the influence of alcohol, a drug of abuse, or both.

h.       "(ii) The claimant is seeking compensation for injuries proximately caused by the driver described in division (B)(1)(b)(i) of this section being under the influence of alcohol, a drug of abuse, or both."

{¶28} The Attorney General has the burden with respect to proof of [exclusionary criteria R.C. 2743.60]. *In re Williams*, V77-0739jud (3-26-79); and *In re Brown*, V78-3638jud (12-13-79).

{¶29} The use of the term "accomplice" in R.C. 2743.60(B) does not require the court to analyze the conduct of an applicant using the Ohio Criminal Code definition of complicity, under section R.C. 2923.03. If an applicant accepts a ride with a legally impaired driver and when the preponderance of the evidence indicates that applicant

has knowledge of the driver's impaired condition, the applicant was an accomplice as defined in R.C. 2743.60(B). *In re Jan*, V97-57941jud (3-15-99).

{¶30} "We believe the legislative intent of R.C. 2743.60(B) is to prevent individuals from recovering from the fund who truly knew or had good reason to know of a driver's intoxication yet intentionally disregard such a risk. R.C. 2743.60(B) cases are fact specific and require a heightened level of scrutiny and analysis of those facts on a case-by-case basis under the law. The premise of "R.C. 2743.60(B) is based upon a

{¶31} reasonable person standard, which ultimately poses the question of what would a prudent person (one of ordinary care and skill) of the same age, intelligence, and experience have done in the same or similar circumstances." *In re Garza*, V2004-60610tc (10-21-04), 2004-Ohio-7266 ¶11, 12.

{¶32} Only the panel of commissioners and the judge of the court of claims can render final judgments. The attorney general merely renders final appealable decisions. The attorney general's function is purely administrative in nature with respect to making an

{¶33} initial determination. The attorney general's scope of authority is limited since the attorney general is unable to afford applicants any hearing rights as due process requires. *In re Parkins*, V2002-51168tc (1-16-03).

{¶34} Black's Law Dictionary Sixth Edition (1990) defines preponderance of the evidence as: "evidence which is of greater weight or more convincing than the evidence which is offered in opposition to it; that is, evidence which as a whole shows that the fact sought to be proved is more probable than not."

{¶35} Black's Law Dictionary Sixth Edition (1990) defines burden of proof as: "the necessity or duty of affirmatively proving a fact or facts in dispute on an issue raised between the parties in a cause. The obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court."

{¶36} The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact. *State v. DeHass* (1967), 10 Ohio St. 2d 230, 39 O.O. 2d 366, 227 N.E. 2d 212, paragraph one of the syllabus. The court is free to

believe or disbelieve, all or any part of each witness's testimony.   *State v. Antill* (1964), 176 Ohio St. 61, 26 O.O. 2d 366, 197 N.E. 2d 548.

{¶37} From review of the case file and with full and careful consideration given to all the testimony presented and the arguments expounded by the parties at the hearing, we find the applicant's claim should be denied pursuant to R.C. 2743.60(B)(1)(c)(i) & (ii). Since counsel for both applicants requested Case Nos. V2010-50027 and V2010-50469 be consolidated for hearing purposes, we believe we may consider all testimony, examination, and cross-examination offered at the hearing irrespective of which applicant called the specific witness.

{¶38} We believe the applicant knew the driver was intoxicated prior to her peeling out of the parking lot at Leo's Bar.   The applicant testified that the driver immediately accelerated her vehicle throwing up gravel in the parking lot, then almost struck two pedestrians, prior to exiting the parking lot.   The applicant testified it was at this point when she realized that the driver was impaired.   However, rather than demanding to leave the vehicle she testified that she and Cicely Shontee tried to reason with the driver, yelled at her, and attempted to "calm her down."   At no time during the applicant's testimony did she state that she demanded the driver to allow her to leave the vehicle.

{¶39} The most salient portion of the applicant's testimony occurred while being questioned by a panel commissioner.   When asked if she made any attempt to get out of the vehicle by unlocking the rear passenger door or attempting to unlock it, the applicant stated no.   The applicant stated that at the time her desire was to calm the driver down and get home.

{¶40} While we are cognizant of the fact that the applicant asserts she was intoxicated at the time of the accident, a review of the question and answer session between her and Officer Ward revealed that she knew the driver was drinking prior to the crash and had been drinking while driving.   Furthermore, she substantiated her impression of the evening with her testimony.

{¶41} Therefore, we find the Attorney General satisfied his burden of proof with respect to R.C. 2743.60(B).   Accordingly, the April 23, 2010 decision of the Attorney General is affirmed.

{¶42} IT IS THEREFORE ORDERED THAT

{¶43} Applicant's motion to permit telephone testimony by Carmen Swider is GRANTED;

{¶44} The April 23, 2010 decision of the Attorney General is AFFIRMED;

{¶45} This claim is DENIED and judgment is rendered in favor of the state of Ohio;

{¶46} Costs are assumed by the court of claims victims of crime fund.

_____
SUSAN G. SHERIDAN
Presiding Commissioner



_____
WILLIAM L. BYERS IV
Commissioner



_____
E. JOEL WESP
Commissioner

ID #I:\Victim Decisions to SC Reporter\Panel Decisions\2011\August 2011 part II\V2010-50469 Mercer.wpd\DRB-tad

A copy of the foregoing was personally served upon the Attorney General and sent by regular mail to Montgomery County Prosecuting Attorney and to:

Filed 8/25/11
Jr. Vol. 2280, Pgs. 88-99
Sent to S.C. Reporter 10-12-12